## In re POTEE BRICK CO. OF BALTIMORE CITY.

(District Court, D. Maryland.   May 31, 1910.)

1. FIXTURES (§ 27*)—LANDLORD AND TENANT—LEASE.

Where a lease provided that the improvements which it was contemplated the tenant would erect on the premises should not be removed therefrom until the rent was paid, such provisions precluded the tenant's right to remove articles annexed to the freehold which would otherwise be removable as trade fixtures.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. § 22; Dec. Dig. § 27.*]

2. BANKRUPTCY (§ 140*)—ERECTIONS ON REAL ESTATE—REMOVAL—MORTGAGEE.

Where a lease of real property to the bankrupt contemplated that the bankrupt would erect on the premises certain improvements which should not be removed until the rent was paid, there was no right in the bankrupt, his trustee or mortgagee, to remove any of the property annexed to the freehold unless and until all the rent in arrears had been paid, whether such property so annexed constituted trade fixtures or not.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 199, 218; Dec. Dig. § 140.*]

3. LANDLORD AND TENANT (§ 157*)—IMPROVEMENTS BY TENANT—REMOVAL.

Where a bankrupt held over with the consent of the landlord and remained in possession under a lease providing that improvements which the tenant erected on the premises should not be removed until the rent was paid, and receivers were appointed at the instance of the landlord, who continued possession awaiting the election of a trustee in bankruptcy, the termination of the lease by forfeiture or expiration of the term did not necessarily terminate the bankrupt's right to remove fixtures after payment of the rent in arrear.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 577, 578; Dec. Dig. § 157.*]

4. LANDLORD AND TENANT (§ 248*)—SECURITY FOR RENTS—CHATTELS—RIGHTS OF CREDITORS.

An agreement that chattels on the premises shall be at the disposal of the landlord as security for rent is not valid as against creditors of the lessee before entering.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 1003; Dec. Dig. § 248.*]

5. BANKRUPTCY (§ 191*)—LANDLORD AND TENANT—DISTRAINT.

A landlord has no lien on distrainable property passing into the hands of a bankrupt's trustee unless he has levied his distraint before the filing of the petition in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 290; Dec. Dig. § 191.*]

6. LANDLORD AND TENANT (§ 269*)—DISTRAINT—PROPERTY LEVIED ON.

A landlord could not distrain against property of the bankrupt tenant levied on under a judgment in favor of the tenant's chattel mortgagee.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 1094; Dec. Dig. § 269.*]

7. EXECUTION (§ 324*)—LEVY—RIGHTS OF LANDLORD—NOTICE TO SHERIFF.

Where a tenant's mortgagee having recovered judgment and levied an execution on the tenant's distrainable goods, the landlord was authorized by St. 8 Anne, c. 14, to give notice to the sheriff of rent in arrears and of the landlord's right to distrain under which he would be entitled to

receive from the sheriff of the proceeds of the goods not exceeding one year's rent.

[Ed. Note.—For other cases, see Execution, Cent. Dig. § 963; Dec. Dig. § 324.*]

8. BANKRUPTCY (§ 191*)—DISTRESS—LEVY—"LIEN BY LEGAL PROCEEDINGS."

A landlord within four months before the filing of a petition in bankruptcy may levy his distress and thereby acquire a lien which a subsequent bankruptcy adjudication would not render void or voidable, the lien thereby secured not being under the law of Maryland a lien secured "by legal proceedings" within Bankruptcy Act July 1, 1898, c. 541, § 67c, 30 Stat. 564 (U. S. Comp. St. 1901, p. 3449).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 290; Dec. Dig. § 191.*]

9. BANKRUPTCY (§ 194*)—LIENS—CREDITORS' BILLS—"LIEN BY LEGAL PROCEEDINGS."

A lien on a bankrupt's assets secured by the filing of a creditor's bill within four months prior to the filing of a bankruptcy petition is a lien secured "by legal proceedings," which by Bankruptcy Act July 1, 1898, c. 541, § 67c, 30 Stat. 541 (U. S. Comp. St. 1901, p. 3449), is avoided by the adjudication.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 289; Dec. Dig. § 194.*]

In the matter of Potee Brick Company of Baltimore City, bankrupt. Proceedings to determine the rights of the Curtis Bay Company, landlord, as against James O. Dickinson, mortgagee of the bankrupt's property. Judgment for the Curtis Bay Company.

Isidor Rayner and John F. Williams, for the landlord.

C. Howard Millikin and Myer Rosenbush, for petitioning creditors appearing on behalf of the bankrupt estate.

ROSE, District Judge. In this opinion, for brevity, the Curtis Bay Company of Anne Arundel county will be spoken of as the "landlord"; the Potee Brick Company of Baltimore City will be called the "bankrupt"; and James O. Dickinson and Robert Moss, his attorney and assignee, will be called the "mortgagee."

The questions which are now to be decided relate to the relative rights of the landlord, the bankrupt's estate, and the mortgagee to certain property which now and at the time of the filing of the petition in bankruptcy were on the property which the bankrupt held as tenant of the landlord.

The lease was made March 1, 1904, for one year. While it said nothing as to renewal of the term, it did contain provisions which seem to show that the parties expected the lease to last longer than one year.

By the terms of the lease the property was to be used by the bankrupt for the manufacture of bricks. The bankrupt was authorized to take clay and other brick-making material from the soil. The rent covenanted to be paid was in the form of a royalty of 50 cents a thousand on the bricks manufactured, with the proviso that the rent should in any event amount to at least $400 per annum.

On March 1, 1909, and at all times thereafter, up until the institu-

tion of the bankruptcy proceedings, the bankrupt owed the landlord for rent in arrear $3,567.76, of which $494.03 was due for the year beginning March 1, 1908, and ending March 1, 1909.

On September 27, 1904, the bankrupt mortgaged to the mortgagee all its brick kilns, sheds, machinery, tools, brick office, small frame houses, and all other bricks, machinery, goods, fixtures, or equipments that might be then in possession or hereafter acquired by the bankrupt, to secure the payment of $5,000 one year after date.

On July 28, 1909, the mortgagee having brought suit at law against the bankrupt for the same debt secured by the mortgage, recovered a judgment against him of $5,500 debt and $17.20 costs, upon which judgment the mortgagee gave credit for $1,008.

On the 31st of July, 1909, the mortgagee caused execution to issue on this judgment and a levy to be made on the property of the bankrupt on the premises leased from the landlord. The sheriff's return shows that the property levied upon was substantially the same property as that described in the mortgage.

On the 6th of August, 1909, the landlord gave the sheriff notice in writing, under the statute of 8 Anne, c. 14, that the bankrupt was a tenant of the landlord and was largely indebted to it for rent due and in arrears. Nothing further appears to have been done under this levy, nor was the property ever removed by the sheriff or sold by him.

Some time after September 20, 1909, the mortgagee under the power contained in the mortgage advertised the mortgaged property for sale on October 20, 1909.

On October 13, 1909, the landlord filed a bill of complaint in the circuit court of Anne Arundel county in equity against the bankrupt and the mortgagee. The bill was filed by it for itself and any other creditors of the bankrupt who might come in and become parties complainant and contribute to the costs and expense. It recited, substantially, all the facts above set forth, and asserted that by the levy the landlord was deprived of its right to distrain. It said that the debt for which the judgment had been given was the same debt for which the property was about to be sold under the mortgage; that the property being held by the sheriff, and the landlord being thereby deprived of its right to distrain, a sale under the mortgage and a removal of the property would deprive the landlord of its lien for rent due and in arrears. It asserted that the mortgagee should be required to pay the rent due and in arrears before making sale of the property or removing it. It said that the landlord was alone entitled as the owner of the freehold to everything which belonged to the freehold, and that as lessor and under its distraint it was entitled to priority upon all the goods and chattels upon the premises. It prayed for the appointment of a receiver, for an injunction to restrain the bankrupt from further dealing with its property and the mortgagee from selling any of it, that the bankrupt might be dissolved, and its assets applied to the payment of its liabilities, and for other and further relief.

On the same day the bankrupt answered neither admitting nor denying the allegations of the bill, but consenting to the appointment of a receiver.

The mortgagee answered that it would be to the interests of all parties concerned to have a receiver appointed; but it expressly denied that the landlord had any rent claim which took priority over the mortgage claim.

On the 14th of October, 1909, the circuit court for Anne Arundel county appointed receivers for the bankrupt.

On the 24th of November, 1909, within less than four months from the recovery of the judgment, four creditors of the bankrupt filed a petition in this court to have the bankrupt so adjudicated. On the 15th of December the adjudication was made.

The landlord in its argument at the hearing and in the brief afterwards submitted on its behalf claims under the terms, covenants, and conditions of the lease absolute title to all the property situated on the premises and annexed to the freehold, whether such property be trade fixtures or not.

By the terms of the lease the bankrupt covenanted to deliver possession of the premises at the end of one year from March 1, 1904. If the covenants of the lease were not carried out, or if possession was not delivered at the expiration of the lease, the lessee was to be considered a tenant at will or by sufferance, and the landlord might take possession without any proceedings whatever.

The lease provided that at the expiration of the term and the payment of all money due and owing by the bankrupt to the landlord, and the fulfillment of all the conditions of the lease, either express or implied, the bankrupt should have three months' time within which it might remove from the premises all improvements erected thereon by it. It was expressly provided that there was no obligation on the part of the landlord to pay for any improvements which might be left on the property in the event of the forfeiture of the lease or after the expiration of the same, and that any improvements left on the premises should belong absolutely to the lessor.

The provisions of the lease above summarized show that the parties to it intended that the improvements which it was contemplated that the bankrupt would erect on the premises should not be removed therefrom until the rent was paid.

When such an agreement is made between the parties, it controls the right to remove the articles annexed to the freehold otherwise removable as trade fixtures. O'Brien v. Mueller, 96 Md. 137, 53 Atl. 663; 13 Amer. & Eng. Enc. of Law, 657; Taylor on Landlord & Tenant, § 554; Simpson Brick Press Co. v. Wormley, 61 Ill. App. 460.

As is said in Ex parte Morrow, 1 Lowell, 386, Fed. Cas. No. 9,850, the right of a tenant to remove trade fixtures may well enough be called rather a "privilege" than a "property." It is one which may be lawfully waived or modified by the terms of the lease. As against the bankrupt and the bankrupt's trustee, when one shall be elected, there is, I think, no right to remove any of the property annexed to the freehold until and unless all the rent in arrears shall be paid, whether or not such property so annexed properly belongs to the class property described as "trade fixtures."

I do not think that the mortgagee stands in any better position with reference to such fixtures than does the bankrupt.

It is urged by the counsel for the landlord that the lease ended more than three months ago either by forfeiture or by the expiration of the term, and that the bankrupt's right, even if the rent were paid, to remove the fixtures, has ceased.

Under all the circumstances of this case, I do not think that this contention can be sustained. The bankrupt held over obviously with the consent of the landlord and remained in possession, as the agreed statement of facts filed in the case shows, until receivers were appointed by the circuit court for Anne Arundel county. Those receivers were appointed at the instance of the landlord, and they are in possession awaiting the election of a trustee in bankruptcy. But, as stated, I am of opinion that neither the bankrupt nor his trustee has any right to remove such of the fixtures as are annexed to the freehold without paying the rent in full.

The question is probably of no practical importance in this case, as the state of affairs disclosed by the schedules would seem to indicate that it would be impossible for the trustee to pay the rent.

The landlord further contends that by the terms of the lease the chattels on the property belonging to the tenant, and which were not so annexed to the freehold as to be fixtures, are by the terms of the lease subject to the claim of the landlord for rent. That view I think cannot be sustained. An agreement that chattels on the premises shall be at the disposal of the lessor as security for rent is not valid against creditors of the lessee before entering. Ex parte J. H. Morrow, 1 Lowell, 386, Fed. Cas. No. 9,850; Bleakley v. Sullivan, 140 N. Y. 175, 35 N. E. 433; Beers v. Field, 69 Vt. 533, 38 Atl. 270.

The landlord further claims that, as a result of the filing of the bill in equity in the circuit court for Anne Arundel county, it acquired an equitable lien upon all the bankrupt's property on the premises. I cannot agree with this view. Either the landlord had the right to distrain or it had not. If it had the right, it had not exercised it, and under the decision of Judge Morris in the case of In re Southern Company of Baltimore City the landlord has no lien upon distrainable property passing into the hands of a bankrupt trustee unless he has levied his distraint before the filing of the petition in bankruptcy. The learned counsel for the bankrupt at the hearing expressly admitted that Judge Morris' decision correctly stated the law of Maryland. But the landlord answers that it could not distrain because of the levy of the execution under the judgment of the mortgagee. That is true, it could not. But what consequences so far as the landlord's rights are concerned follow from the levy of the execution? Simply these: That under the statute of 8 Anne, c. 14, in force in Maryland, it had the right to give notice to the sheriff that its rent was in arrear; that it had the right to distrain and to notify him not to remove the goods. Under this notice by the terms of the statute the landlord was entitled to receive from the sheriff out of the proceeds of the goods sold on execution not exceeding one year's rent. In this case the last year's rent to accrue is the rent which became due on March 1, 1909, and the

179 F.—34

amount due for that year under the terms of the lease was $494.03. By the notice given to the sheriff by the landlord, the landlord acquired the right to be paid out of the proceeds of the property taken under execution such sum of $494.03. The subsequent filing of the creditors' bill by the landlord could not operate to extend its lien for any greater sum than the $494.03.

If the levying of a distraint is the securing of a lien by legal proceedings, the adjudication in bankruptcy within four months after the levy would make such lien void or voidable.

A landlord may within four months before the filing of a petition in bankruptcy levy his distress, and he may thereby acquire a lien which the subsequent adjudication does not render void or voidable; but that is because the lien he thereby secured under the law of Maryland was not a lien by legal proceedings within the meaning of section 67c of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449]). If the purpose or effect of the bill filed on the equity side of the circuit court for Anne Arundel county was to secure a lien which had not up to that time been secured, any lien so acquired would be such a lien as that section of the bankruptcy act declares shall be avoided in the event that bankruptcy proceedings are instituted within four months.

I conclude, therefore, that the fixtures annexed to the freehold become the property of the landlord, unless the trustee shall be in a position within 15 days after his election as trustee to pay all the rent in arrear, including the rent which would have accrued since the institution of the proceedings in bankruptcy, and that the landlord has a lien to the amount of $494.03 on the distrainable chattels on the premises passing into the possession of the trustee. If the trustee in bankruptcy and the landlord shall find it impracticable to agree as to what articles of property on the premises are annexed to the freehold, so that under this decision they become the property of the landlord, they may apply for further directions.

I do not find that the pleadings in this case are now in such shape as to make it proper that I should pass on any of the questions which may conceivably arise between the mortgagee, whether in his capacity as mortgagee or as judgment and execution creditor, and the bankrupt estate. If such questions do arise, they will be disposed of upon proper proceedings had to that purpose.